**BURRELL, Plaintiff, v. MORAN, et, Defendants.**

Common Pleas Court, Cuyahoga County.

No. 574726.   Decided November 10, 1948.

Chester K. Gillespie and John J. Pegg, Cleveland, for plaintiff.

Burt W. Hannon, Frank B. Hannon and James A. Chiara, Cleveland, for defendants.

## OPINION

By MERRICK, J:

This action is before the Court upon the issue presented by defendants' demurrer to the petition. Plaintiff's complaint is that the defendants maliciously published and caused to

be published certain libelous matter in which, in substance, it is alleged that defendants identified plaintiff as a "Communist," "Communist-owned," and with having a "Communist record." In the prayer of the petition, actual damages of any specific nature are not claimed. Defendants' demurrer is based on the contention that plaintiff's petition does not set forth a complaint of libelous publication, the contents of which constituted libel **per se,** and in the absence of an allegation of actual and specific damage, plaintiff's case should fail upon the state of the pleadings.

Sheared of burdensome terminology defendants claim that erroneously attaching to a person connection with the Communist Party or attaching a Communist label to a person in error is not a libel **per se** and in the absence of an allegation of libel **per quod,** the action should fail.

Defendants are charged with the publication and distribution, to a list of subscribers and others, of a pamphlet under the name "Information for Americans." The alleged libel complained of is set forth in exact language in the petition. For the purpose of this opinion it is sufficient to note that plaintiff contends that he was labeled by defendants as a Communist and/or an advocate of destruction of the American way of life, and/or a secret undercover agent of Soviet Russia and/or a treacherous communist and/or an advocate of conduct designed to lead to violence with resultant individual injury and death and/or as a member of a pressure movement which is led and incited by Communists.

In this demurrer the question is squarely raised: "Is it libelous **per se** to write of one that he is a Communist?"

A writing is defamatory—that is, actionable, without allegation of proof of special damage—if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community, even though it may impute no moral turpitude to him, directly or indirectly. Peck v. Tribune Co., 214 U. S., 185; Katapodis v. Spectator, 287 N. Y., 20, 38 N. E., 2nd, 113; Grant v. Readers Digest, 151 Fed. 2nd, 733.

Whether language has that tendency depends upon several factors; upon the temper of the times, the current of contemporary public opinion, with the result that words, harmless in one era, in one community, may be highly damaging to reputation at another time or in a different locality. Sweeney v. Schenectady, 122 F. 2nd, 288; Sydney v. MacFadden, 242 N. Y., 208, 151 N. E., 209.

Today, and for some time in the past, there has been widespread public aversion for Communism, its adherents and

sympathizers. Whether or not Communism stands for violent overthrow of our government or orderly process of political activity for the lawful change of our form of government,— in either interpretation or understanding, a large segment of our populace attaches to the activities of Communists an odorous interpretation that tends toward public aversion. Bridges v. Wixon, 326 U. S., 168. It is important to note that in the United States of America, legislation and executive orders have been enacted and promulgated in recent years which subject communists, their affiliates and sympathizers to loss of public office and private position and, in some cases, even to deportation proceedings. These prominent denouncements and condemnations carry with them a semblance of official unsavory stigma to be attached to all who may fall within the category of Communism and its associated activities. This association has been decreed unwholesome, even though, under our constitutions and statutes, Communists may function as a recognized political party.

Having regard for the current public attitude—transitory though it may be—it is apparent beyond serious qualification that a false charge that one is a Communist is basis for a libel action. This is a more marked definition of legal position in the face of recent declarations by several religious sects that adherence to Communism or its tenets may or will result in expulsion from that sect of such adherents. Kaminsky v. American Newspapers, 283 N. Y., 748, 28 N. E., 2nd, 971; Spanel v. Pegler, 160 F. 2nd 619.

Whether or not it be a fact that Communism takes to its bosom advocates of violent overthrow of government is not of such import that would warrant a full discussion here. Suffice it to say that right or wrong there is a general belief in this community that Communism does advocate and condone such acts of violence and conspiracy to commit such acts by organized effort. If the publication wrongfully labels a person as a member of a class or group, contemplation must be had of public opinion toward such class if such opinion is the result of the understanding and reaction of persons of ordinary and average intelligence. Hoey v. N. Y. Times, 122 N. Y. S. 978. The question is the effect upon the person of ordinary and average intelligence, rather than upon so-called right thinking and wrong thinking people. Grant v. Readers Digest, supra.

Whatever doubt there may have been in the past as to the opprobrious effect on the ordinary mind of the charge of adherence to communistic beliefs or principles, recent events, national and international make it manifest that to label

a person a Communist is to taint him with disrepute. Refute it as they may, Communists are generally believed to advocate violent over throw of Government, which is a crime involving moral turpitude. It requires no argument to demonstrate that if an individual erroneously is held forth in a publication to be a person reputed to be conniving at disobedience to law and to be a person reputed to believe it to be proper, by force to commandeer the operation of any branch of our government and/or its property, such publication would tend to expose such person to public hatred, contempt, ridicule and obloquy, and tend to deprive him of public confidence and to injure him in his lawful occupation, whatever it may be, and would be libelous **per se.**

It has been argued that the word Communist has no definite meaning,—that it is merely the expression of an opinion which if held actionable **per se** is to eliminate its use from political discussions. Concededly, the word is carelessly and perhaps indefinitely used today. Nevertheless, there can be no denial that its appearance as a characterization in a publication is sufficient to tend to destroy a person's presumably good reputation with a sizeable segment of the public. This is particularly true, because newspapers, magazines and other publications, as pretended molders of public opinion, have created the ogre which many ordinary people associate with persons of communistic leanings. Even if these views are incorrect and are in truth only the temporary passing notions of the hour, they must be respected as criteria. Courts have held in 1889 that it was libelous **per se** to write of a man as an anarchist. Cerveny v. Chicago Daily News, 139 Illinois, 345. It was held in 1915 to be libelous **per se** to write of a man as a socialist Ogren v. Rockford Star, 288 Illinois, 405. It was held in 1926 that it was libelous **per se** to write of a man as a "Red." Toomey v. Jones, (Oklahoma) 254 Pacific 736. Following the reasoning in those cases and others cited, it is the opinion of this Court that it is libelous **per se** in our present era to erroneously write of a man as a Communist or of communistic sympathy, association or belief.

The demurrer will be overruled. Counsel for defendants will be given adequate leave to join the issues on the merits of the action.