Milton A. Lundstrom, Plaintiff-Appellant, v. Winne-
bago Newspapers, Inc., a Delaware Corporation,
E. Kenneth Todd, John W. Grimes and C. Hjalmar
Nelson, Defendants-Appellees.

Gen. No. 11,398.

Second District, First Division.

September 21, 1960.

Askow, Stevens, and Hardy, Willard H. Pedrick, all of Chicago, and LaVerne E. Anderson, of Rockford, for appellant.

Miller, Thomas, Hickey, and Collins, of Rockford, for appellees.

DOVE, J.

The complaint in this case alleged that on January 23, 1958 the Rockford Morning Star a newspaper of general circulation in Rockford, Illinois, published by defendant, Winnebago Newspapers Inc., contained the following false and defamatory charge of and concerning the plaintiff, viz: "WHO GOT $7,000 IN BAR DEAL?" (directly underneath this headline was a photograph of the plaintiff and two other persons and below these newspaper cuts the following article appeared)

> "Carl Calacurcio, left photo, 604 15th Ave., testified before the city liquor commission Wednesday afternoon that he received $7,000 from James E. Virgili for a city liquor license after Calacurcio took Virgili to the office of former Mayor Milton A. Lundstrom, center photo, last April and arranged for Virgili to receive a license which had been surrendered by the Ken-Rock Legion post. Calacurcio testified that he retained $850 of the money and gave $5,800 to Carroll H. Johnson, right photo, who then was serving as a member of the city zoning board. Johnson, under oath denied that he received the money."

The complaint then alleged that in its issue of January 25, 1958 the same newspaper published the following front page story, viz: "LUNDSTROM ISSUED MYSTERY LICENSE ILLEGALLY: COLLINS"

129

"Former Mayor Milton A. Lundstrom had no authority to issue a city liquor license last April 17 to James E. Virgili, who says he paid $7,000 for a class A license after Ken-Rock Legion post had surrendered a Class D. license to Lundstrom."

The complaint further alleged that on February 5, 1958 the following false and defamatory charge of and concerning the plaintiff was published, viz:

"The former mayor (meaning the plaintiff) had showed astounding laxity in enforcing city and state statutes, particularly as concerned the sale of liquor to minors.

"The liquor commission (which Schleicher now heads as mayor) now handles things out in the open. Tavern operators now know that liquor sales to minors will not be tolerated. We also are engaged in tightening the entire liquor code.

"The issuance by the former mayor (meaning the plaintiff) of a city liquor license after $7,000 had changed hands will remain fresh in the minds of Rockford folk for a long time, Schleicher said.

"He said tavern operators, with their investments at stake, have demonstrated 'favorable response' to viligant liquor law enforcement."

The complaint then alleged that the plaintiff was Mayor of the City of Rockford and as such the Liquor Commissioner of the City from 1953 through 1957 inclusive; that the article of February 5, 1958 was a continuation of the defamatory articles of the previous articles of January 23 and January 25, 1958 and were published by defendants with the intent to injure plaintiff in his good name and reputation and that as a result of such publication plaintiff was held in public contempt and his good name and reputation injured and damaged.

To this complaint the corporation filed its separate motion to dismiss and the individual defendants filed a similar motion. These motions were heard and sustained by the trial court. The plaintiff elected to abide his complaint and the same was dismissed and from an appropriate final judgment plaintiff appeals.

Counsel for appellant state that the only question presented upon this appeal for our determination is whether the sentence in the publication of February 5, 1958 is libelous. This sentence states that Mayor Schleicher said: "The issuance by the former mayor of a city license after $7000.00 had changed hands will remain fresh in the minds of Rockford folk for a long time." It is counsel's contention that this sentence is libelous per se; that it carries an imputation of lack of integrity; that it charges plaintiff with complicity in accepting a bribe and that the natural and obvious meaning of the words used is that the plaintiff, the former mayor, issued the liquor license referred to as a result of $7,000.00 being paid to some friend of the plaintiff, with the knowledge of the plaintiff, as a consideration for the issuance of the liquor license.

■ It is well settled that it is for the court to decide whether the publication was reasonably capable of the construction placed thereon by the plaintiff. In Dilling v. Illinois Pub. & Printing Co., 340 Ill. App. 303, 91 N.E.2d 635, it was insisted that the publication charged that the plaintiff was a communist or fascist. The trial court sustained a motion to dismiss the complaint and in affirming the judgment of the trial court, the appellate court, omitting the authorities cited, said: (pp. 305–6) "The sole question presented is whether the article complained of is libelous per se. Characterization of a person as a Communist and as an unAmerican disciple of fascism is libelous per se. The article is to be understood according to the natural and obvious meaning of the words used, taking into

consideration the article as a whole and including headlines, and where the words used have a clear meaning and are free from ambiguity it is a question for the court whether the words are capable of the meaning ascribed for by the innuendo."

In LaGrange Press v. Citizen Pub. Co., 252 Ill. App. 482, the court, omitting citations, said: (p. 485) "In determining whether or not the published article is libelous per se, we must view it stripped of all innuendo, colloquium or extrinsic or explanatory circumstances, and if the words are unambiguous and incapable of an innocent meaning they may be declared libelous as a matter of law. In determining this, the words must be taken in the sense which readers of common and reasonable understanding would ascribe to them, that is, in their ordinary and common acceptation. 'All the words in the article are to be considered, and when they are all considered together, the question is, how would they be understood by men of common and reasonable understanding?' The meaning of the words alleged to be libelous cannot be by innuendo extended beyond a reasonable construction. Innuendoes are not available to impute libel to an article which in itself is otherwise innocent of any libelous meaning. Words alleged to be libelous will receive an innocent construction if they are reasonably susceptible of it."

■ ■ Counsel for appellant argues that any reference in this article to the payment of $7000.00 was irrelevant to the mayor's act in issuing a city liquor license unless the $7000.00 referred to, was the consideration paid the mayor for an official act. What this article says, however, is that the plaintiff issued a city liquor license after $7000.00 had changed hands. The article does not say that plaintiff received $7000.00 for issuing a city liquor license. It does not say that $7000.00 was the consideration paid the mayor

132

for issuing a city liquor license. It does not say any sum was paid to any friend of the plaintiff with knowledge of the plaintiff. The words used do not charge that plaintiff accepted a bribe nor does it implicate plaintiff in the commission of any crime and are not reasonably susceptible of the meaning attributed to them in the complaint. In order for the article to state that $7000.00 was the consideration paid the mayor for issuing a city liquor license, words not used in this sentence must be incorporated therein. To hold that this sentence is libelous would distort and enlarge the accepted and ordinary meaning of the words used and give them a meaning far beyond that which they reasonably convey. (LaGrange Press v. Citizens Pub. Co., 252 Ill. App. 482, 486.) Had the words used charged plaintiff with bribery or with complicity in accepting a bribe it was libelous per se and such words necessarily import damage and malice in legal contemplation. (Cook v. East Shore Newspapers, Inc., 327 Ill. App. 559, 588, 64 N.E.2d 751.)

■ The words used in the article upon which this action is predicated are not reasonably and fairly susceptible of the meaning ascribed to them by appellant and therefore the trial court did not err in sustaining appellees' motions to dismiss. (Kulesza v. Chicago Daily News, Inc., 311 Ill. App. 117, 126, 35 N.E.2d 517.)

In Larkin v. Gerhardt, 21 Ill.App.2d 122, 157 N.E.2d 426, it appeared that the original complaint was filed October 25, 1957, charging defamation on November 1, 1956. Thereafter, on December 11, 1957 an amended complaint based on alleged republication of the defamation on or about February 9, 1957 was filed. It was held that the amended complaint introduced a new cause of action and did not relate back to the time of the filing of the original complaint and was barred by the one year limitation statute. (Ill. Rev. St. 1957

133

Chap. 83, sec. 14.) The instant complaint was filed on February 4, 1959 any action based on the articles published on January 23, 1958 and January 25, 1958 are barred and it is not otherwise contended.

The judgment of the circuit court of Winnebago County is therefore affirmed.

Judgment affirmed.

McNEAL, P. J., concurs.

SMITH, J., concurs.