Nathaniel J. Reed, Jr., Plaintiff-Appellant, v. Bud R. Albanese, Individually and d/b/a North Loop News, Defendant-Appellee.

Gen. No. 50,900.

First District, Third Division.

December 8, 1966.

Mack P. Manning, and Ross and East, of Chicago (George M. Petrich, of counsel), for appellant.

Sidney S. Schiller and Paul C. Ross, of Chicago, for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

This is an action for libel by the plaintiff, Nathaniel Reed, against Bud Albanese, individually and doing business as the North Loop News. The defendant filed an answer, a motion for summary judgment and a support-

ing affidavit. The plaintiff filed a counteraffidavit. Summary judgment was granted and the plaintiff has appealed.

The basis of Reed's claim is an article published in the North Loop News on February 13, 1964, which he alleged was wholly false:

"Reed Jailed for Housing Violations

"Municipal Housing Court Judge Richard A. Napolitano last Friday issued a warrant of commitment to the House of Correction for Nathaniel J. Reed, Jr., in lieu of $2400.00 in fines for housing violations in the apartment building at 62–64 West Huron.

"Reed was found guilty of failing to provide additional means of egress, fire walls in stairwells and fireproof partitions and for failing to obtain a permit to make fire repairs."

The defendant's answer and his affidavit in support of the summary judgment motion alleged that the plaintiff was unknown to him, that the article was based on a release furnished by a news service and was privileged because it was a fair, true, correct and impartial report of a public proceeding conducted in the First Municipal District of the Circuit Court of Cook County. A certified copy of the court order was attached to the affidavit as an exhibit:

"CITY OF CHICAGO
v. NO. 63 MC 443515
NATHANIEL J. REED, JR. QUASI CRIMINAL
228 North La Salle St.

"This cause coming on for further proceedings herein, it is considered by the Court that the plaintiff have judgment on the finding of the Court entered herein and it is considered by the Court that the plaintiff have and recover of and from the defend-

■■■■■■■■■■■

ant a fine in the sum of TWENTY-FOUR HUN-DRED DOLLARS ($2400.00), . . . and that execution issue for the amount of said fine. And it appearing to the Court that said fine accrued to the plaintiff in consequence of the violation by defendant of the ordinance of the plaintiff described in the complaint herein . . . the Court finds . . . that said defendant has been duly and regularly convicted of the violation of said ordinance according to law, and that any person convicted of a violation of said ordinance, may, under the law, be imprisoned in the House of Correction of said City for non-payment of any fine imposed for such violation.

"Order warrant arrest and commitment to House of Correction until fine and costs paid or worked out at TWO DOLLARS ($2.00) per day providing the commitment shall not exceed SIX (6) MONTHS."

The plaintiff's counteraffidavit stated that he was an attorney and as such he was the registered agent of a building corporation; that as the agent he was sued by the City of Chicago for violations of the City's Building Code and that, although a fine had been imposed, he was never confined in jail. The plaintiff's argument on appeal is that the summary judgment was improper because his counteraffidavit raised a genuine issue as to whether he was jailed and this factual issue was material in determining whether publishing the newspaper article was libelous.

■■ Summary judgment must not be granted if the pleadings, affidavits and exhibits show that there is a genuine issue as to any material fact. Ill Rev Stats (1965) c 110, § 57(3). The documents in the present case show that there is a genuine issue of fact because the article's headline said Reed was jailed and he flatly denied that he was. The question, however, is whether this issue is a material one and this depends on whether the article

is libelous per se. The plaintiff alleged only general damages: that as an attorney and as a corporate agent he was injured in his businesses and reputation. If an article is libelous per se it is not necessary to allege special damages. Lorillard v. Field Enterprises, Inc., 65 Ill App2d 65, 213 NE2d 1 (1965); Cook v. East Shore Newspapers, Inc., 327 Ill App 559, 64 NE2d 751 (1946). But if an article is not libelous per se the complaint must allege the special, specific damage that resulted from its publication, and the failure to do so is a fatal defect. Hambric v. Field Enterprises, Inc., 46 Ill App2d 355, 196 NE2d 489 (1964); Parmelee v. Hearst Pub. Co., Inc., 341 Ill App 339, 93 NE2d 512 (1950).

The courts of Illinois have formulated a general definition of libel per se, and the decisions in the particular cases delineate the essence of the concept: words so obviously and naturally hurtful to the person aggrieved that proof of their injurious character can be, and is, dispensed with. See, e. g., Wade v. Sterling Gazette Co., 56 Ill App2d 101, 205 NE2d 44 (1965) and Foster v. Boue, 38 Ill App 613 (1890). As a practical matter the categories of words which constitute libel per se will usually be those which, if spoken, were slander per se at common law. Whitby v. Associates Discount Corp., 59 Ill App2d 337, 207 NE2d 482 (1965).

In determining if an article is libelous per se the words complained of must be construed in the context of the article as a whole, and in doing this the headline of the article must be considered together with the text of the article. Wade v. Sterling Gazette Co., supra; Kulesza v. Chicago Daily News, Inc., 311 Ill App 117, 35 NE2d 517 (1941). The words must be read in their natural and obvious sense and if they are capable of an innocent interpretation they must be declared nonactionable at law. John v. Tribune Co., 24 Ill2d 437, 181 NE2d 105 (1962); Hambric v. Field Enterprises, Inc., supra.

The article was not "wholly false" as the plaintiff alleged. With the exception of the headline "Reed Jailed for Housing Violations" the article fairly, substantially and accurately reported the proceedings and the judgment of the court. To this extent the publication was privileged and the privilege could only be defeated by proving that the publication was motivated solely by malice. Lulay v. Peoria Journal-Star, Inc., 34 Ill2d 112, 214 NE2d 746 (1966); Judge v. Rockford Memorial Hospital, 17 Ill App2d 365, 150 NE2d 202 (1958). The burden of proving actual malice was on the plaintiff and since his counteraffidavit did not create an issue of fact as to malice the privilege was established as to the matters printed in the body of the article.

A reader of common and reasonable understanding (Hotz v. Alton Telegraph Printing Co., 324 Ill App 1, 57 NE2d 137 (1944)) by reading the headline alone could, due to its brevity, conclude that Reed had been placed in jail, and it is this imputation that the plaintiff seeks to make the basis of his action. However, when the headline is read together with the body of the article and the innocent construction rule is applied, the article as a whole does not impute that the plaintiff was placed in jail. The relevant text of the article states that a Municipal Court judge ". . . last Friday [a week before the publication of the article] issued a warrant of commitment to the House of Correction for Nathaniel J. Reed, Jr., in lieu of $2400.00 in fines for housing violations. . . ." Violations of the Building Code are initially punishable only by fine and then, if the fine remains unpaid, by a jail commitment to work out the fine. Everyone is presumed to know the law (DuMond v. City of Mattoon, 60 Ill App2d 83, 207 NE2d 320 (1965)), and the reader of common and reasonable understanding would be presumed to understand that the quoted statement meant that the Municipal Court ordered Reed committed *unless*

he paid a $2,400 fine, for "in lieu of" denotes instead of, in place of, in substitution for the penalty initially imposed. Carey v. Retirement Board of San Francisco, 131 Cal App2d 739, 281 P2d 25 (1955); Webster's New International Dictionary (2nd ed 1949). When the reader considers the headline in conjunction with the fuller explanation of the Municipal Court proceeding given by the text of the article, he is able to read the two as consistent. He understands that the headline, instead of declaring that Reed had been placed in jail, epitomizes the court order committing him and that the condition on which the commitment was to begin is set forth in the text. Although neither the text nor the headline makes clear whether Reed was still entitled to avoid commitment by paying the fine or whether he had defaulted in payment and had been committed, and although either construction may seem reasonable if the innocent construction rule is not applied, under that rule the article must be interpreted as not charging Reed with having been committed.

 Apart from the application of the innocent construction rule, in the circumstances of the case the article was not libelous per se. Unlike Herhold v. White, 114 Ill App 186 (1904), the offense for which the plaintiff was supposedly jailed was not left unspecified. The reader was not left to assume that the plaintiff had committed some serious criminal offense for which imprisonment was the proper punishment. The headline stated that he was jailed for housing violations and the article made clear that he was found guilty of such violations and specified their nature. The violations did not involve moral turpitude and were not infamous crimes nor indictable offenses. (Contrast: Adle v. Herald Co., 36 NYS2d 905 (1942) and Ray v. Times Pub. Co. (Tex), 12 SW2d 165 (1929).) The violations were not crimes at all; they were quasi-criminal offenses. When a governmental agency uses quasi-criminal proceedings

to obtain penalties for violations of public laws, a defendant is entitled to invoke his constitutional privilege against self-incrimination (City of Chicago v. Berg, 48 Ill App2d 251, 199 NE2d 49 (1964)), but this principle is based on concern for the rights of a defendant not on society's feelings about the seriousness of his conduct. The offenses for which the headline said he was jailed were relatively minor from the viewpoint of the public and the institution to which the article said a warrant had been issued for his commitment was not a penitentiary but the House of Correction—and this only if his fine was not paid. If the article charged Reed, falsely, with having been put in jail, it cannot be said that this would naturally induce an evil opinion of him in the mind of the average reader and therefore injury to his reputation cannot be presumed as a matter of law. If he was injured by the false statement that he was jailed, apart from the injury occasioned by the true statement that he was convicted of housing violations, the plaintiff should have alleged the special damage that resulted from publication of the false statement.

Finally the language complained of does not come within the rule that words written of a plaintiff in his trade or profession which tend to impair his credit and reputation and injure him in his business are libelous per se. (See: Hudson v. Slack Furniture Co., 318 Ill App 15, 47 NE2d 502 (1943); Barth v. Hanna, 158 Ill App 20 (1910).) The headline somewhat, and the article more so, implied that the owner or manager of the building ignored the safety requirements of the City's ordinance, and an inference could be drawn that the owner or manager was not fit to manage the building. But in his counteraffidavit the plaintiff denied that he had title to the building and he did not allege that as the registered agent of the corporation-owner his duty was to guide management policy or to oversee management of the building. The words which might imply lack of

61

business competence were not used of the plaintiff in relation to his business either as a registered agent or as an attorney, and so are not libelous per se. Campbell v. Morris, 224 Ill App 569 (1922).

The issue of Reed's confinement, although a genuine issue of fact, was not a material issue in the determination that on the basis of the pleadings, affidavits and exhibit the defendant was entitled to judgment as a matter of law. Since the article was not libelous per se the plaintiff's failure to allege special damages entitled the defendant to judgment. Hambric v. Field Enterprises, Inc., supra.

The summary judgment is affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.